

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-29-2006

# Ochs v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4421

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Ochs v. Comm Social Security" (2006). *2006 Decisions*. Paper 813.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/813

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-4421

———

JAMES L. OCHS,

Appellant
v.

COMMISSIONER OF SOCIAL SECURITY

———

On Appeal from an Order of the
United States District Court for the District of New Jersey
(D.C. Civil No. 01-cv-05275)
District Judge: Honorable John C. Lifland

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 29, 2006

Before: BARRY, VAN ANTWERPEN, and JOHN R. GIBSON*, <u>Circuit Judges</u>.

(Filed: June 29, 2006 )

————

OPINION OF THE COURT

———

_____
\*      The Honorable John R. Gibson, Circuit Judge for the United States Court of
       Appeals for the Eighth Circuit, sitting by designation.

VAN ANTWERPEN, Circuit Judge.

James Ochs appeals from the August 5, 2005, Order of the District Court, which affirmed the Commissioner of Social Security's (the "Commissioner") denial of Social Security Disability Insurance ("SSDI") benefits. We have jurisdiction pursuant to 28 U.S.C. § 1291, and because substantial evidence supports the Administrative Law Judge's ("ALJ") decision that Ochs was not disabled during the relevant period, we will affirm.

**I.**

As we write solely for the benefit of the parties, we will set forth only those facts necessary to our analysis. On May 21, 1992, Ochs filed a SSDI application claiming disability since April 1, 1991. His insured status under the Social Security Act expired on December 31, 1993, making April 1, 1991-December 31, 1993, the time period at issue. Ochs's application for benefits was denied initially and again upon reconsideration. Ochs filed a timely request for administrative review, and after a hearing on the matter, the ALJ issued an unfavorable decision on May 12, 1995.

Ochs requested rehearing with the Appeals Council. On October 23, 1996, the Appeals Council remanded the case for a new hearing (the "supplemental hearing"), on the grounds that the ALJ gave insufficient consideration to Ochs's anxiety and failed to consider all of the functional factors used to determine the severity of Ochs's mental impairment. Ochs testified at the supplemental hearing on January 14, 1998, where he stated that he had not worked since April 1, 1991. From 1977-1990, Ochs worked as a railroad laborer for

2

Conrail (now New Jersey Transit), a job that required heavy lifting. From 1990-1991, Ochs worked for Union County as a laborer in mosquito control, a job that also required heavy lifting.

Ochs first injured his back in 1981 during work for New Jersey Transit. In 1982, he underwent back surgery and returned to work after the surgery yielded successful results. Ochs re-injured his back in 1986, after he slipped and fell at work. His final injury occurred in 1991 when Ochs twisted his lower back in a fall at work. Thereafter he did not return to work.

Ochs complained of constant sharp, shooting, and aching lower back pain that radiates into his thighs, hips, and legs. Ochs also complained of depression and anxiety. After the supplemental hearing, the ALJ issued an unfavorable decision on May 26, 1999. Ochs filed a request for review with the Appeals Council, which request was denied. Ochs sought review of the ALJ's Decision by the District Court and on August 5, 2005, the District Court affirmed the decision of the Commissioner.

**II.**

We review the ALJ's decision for substantial evidence. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla. It means such evidence as a reasonable mind would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

The Social Security Administration uses a five-step sequential procedure to evaluate

disability claims.  See 20 C.F.R. §§ 404.1520, 416.920.  At step one, the Commissioner

decides whether the claimant is currently engaged in substantial gainful activity.  Id. §§

404.1520(b), 416.920(b).  At step two, the Commissioner decides whether the impairment

is severe.  Id. §§ 404.1520(c), 416.920(c).  At step three, medical evidence of the claimant's

impairment is compared to a list of impairments (the "Listings") presumed severe enough to

preclude any gainful work.  Id. §§ 404.1520(d), 416.920(d).  The ALJ is also required to

explain the reasons supporting his decision.  See Burnett v. Commissioner of Social Security

Admininstration, 220 F.3d 112, 119 (3d Cir. 2000).  If the claimant's impairment matches

one of the listed impairments, he qualifies for benefits without further inquiry.

If the claimant does not qualify under the Listings, the analysis proceeds to the fourth

and fifth steps.  At step four, the ALJ determines whether the claimant retains the residual

functional capacity ("RFC") to perform  his or her past relevant work.  Id. §§ 404.1520(e),

(f), 416.920(e), (f).  Finally, at step five, the Commissioner determines whether the claimant

can make a transition to other work.  In making this determination, the Commissioner

considers the claimant's age, education, work experience, and residual functional capacity.

Id. §§ 404.1520(g), 416.920(g).  If the claimant cannot do his past work or other work, he

qualifies for benefits.  Sullivan v. Zebley, 493 U.S. 521, 525-26 (1990).

In this case, the ALJ found: (Step One) although it was unclear whether Ochs had

been engaged in substantial gainful activity due to his conflicting and evasive testimony,[1] the ALJ assumed that Ochs had not engaged in substantial gainful activity during the relevant period; (Step Two) Ochs's impairments were severe; (Step Three) Ochs's combination of impairments did not meet the clinical criteria of any impairment or medical condition found in the Listings; (Step Four) Ochs had a light level RFC and was unable to perform his past relevant work; and (Step Five) based on the vocational expert's testimony, Ochs's capacity for light work, his age, education, and work experience, he was found not disabled.

## III.

Ochs first challenges the ALJ's conclusion at step three, alleging the ALJ failed to compare the combination of his severe impairments to the impairments in the Listings. Ochs also argues the ALJ did not specify which Listing he considered, and thus a remand is required under Burnett. We agree with the District Court that the ALJ's review of the medical evidence was sufficient.

In Burnett, we required the ALJ to set forth the reasons for his decision and remanded for further consideration on the ground that the "ALJ's conclusory statement in this case is

---

[1]The record contains notes from Ochs's treating physician, Dr. Rowe, stating that as of July 22, 1991, Ochs was "working for himself." In August 1991, Ochs claimed to be "happy with his new job" and in March 1992, he stated to Dr. Rowe that he worked part-time at his own business. In August 1992, Ochs told Dr. Rowe that he was "working hard." However, at the supplemental hearing, Ochs testified that he had not worked since April 1, 1991. Ochs admitted to telling Dr. Rowe that he was working hard but could not explain why he made that statement other than wanting to make a good impression on the doctor.

. . . beyond meaningful judicial review." 220 F.3d at 119-20. However, the ALJ's analysis in this case satisfied Burnett. As we later explained in Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), Burnett "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."

In the present case, the ALJ's opinion provided a sufficiently thorough review of the medical records and of Ochs's condition. The ALJ discussed the evidence pertaining to Ochs's 1982 back surgery, work-related injuries, CT scans indicating degenerative spinal disease, physical therapy sessions, X-rays, panic attacks, and prescription tranquilizers. The ALJ also considered Ochs's testimony and credibility as to pain symptoms and each of the doctors presented by Ochs and the Commissioner. Further, the ALJ specifically identified Ochs's severe impairments as his degenerative disc disease and panic disorder.

Ochs also claims that the ALJ did not satisfy Burnett because he failed to identify the specific Listing he considered. However, there is no requirement that the ALJ must identify or analyze the most relevant Listing. See Scatorchia v. Commissioner of Social Security, 137 Fed. Appx. 468, 471 (3d Cir. 2005) (finding that the ALJ met the Jones requirement at step three without identifying the relevant Listing).

Here, we are satisfied that the ALJ's step three analysis was sufficient. As we explained in Arroyo v. Commissioner of Social Security, "[a]lthough we would encourage

6

ALJ's to specifically identify the listed impairments under consideration, we are able to discern the particular listed impairments considered in this case based on the ALJ's discussion of the relevant evidence . . ." 155 Fed. Appx. 605, 608 (3d Cir. 2005). Ultimately, "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981). Given the ALJ's review of the medical evidence, we think it is apparent which Listings (*i.e.*, Listing 1.05 – pertaining to disorders of the spine; and Listing 12.06 – pertaining to anxiety related disorders) the ALJ was considering, and accordingly, we agree with the District Court that the ALJ's step three analysis satisfies the requirements of Burnett and Jones.

Ochs also argues the ALJ did not properly evaluate the medical evidence and instead substituted his own medical judgment for that of Ochs's medical experts. Generally, an ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending on the extent to which supporting explanations are provided." Santiago v. Barnhart, 367 F. Supp. 2d 728, 736 (E.D. Pa. 2005) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). If the treating physician's opinion regarding the nature and severity of the impairment "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence," that opinion is given "controlling weight." 20 C.F.R. § 404.1527(d)(2)(2005); see also Social Security Regulation 96-2P.

7

In this case, the opinion of Ochs's treating physician, Dr. Rowe, supports the Commissioner's argument and the ALJ's determination. Dr. Rowe's report states that Ochs was "neurologically OK" and that Ochs said he was working during the period he alleged he was disabled. The ALJ also properly limited the reports of Dr. Heller, Ochs's treating orthopedist, because they fell outside the relevant period and were not specific as to Ochs's actual limitations on sitting and standing, and were not inconsistent with a light level RFC.

Further, two of the Commissioner's physicians, Dr. Udomsaph and Dr. Zemel, reviewed Ochs's records during the relevant period and determined that he could engage in light work. Dr. Gallick, one of Ochs's orthopedists, noted that during the relevant period on April 2, 1991, Ochs's back was "definitely better" and that he could return to work unrestricted. Another consulting physician for the Commissioner, Dr. Ahamed, examined Ochs during the relevant period on December 1, 1992, and found that Ochs's upper-body range of motion and resistance capacity was normal, as was his range of motion in the cervical spine. Given that the consulting doctors' evidence was substantial and not inconsistent with the record, it was proper for the ALJ to credit them over the treating doctors, one of whom was not rejected (Dr. Rowe), because his findings supported the ALJ's determination. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) ("[w]here, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason'") (quoting Plummer, 186 F.3d at 429).

8

Ochs further contends the ALJ improperly rejected evidence from his consulting psychiatrist and neurologist, Dr. Brazin, as well as reports from one of his consulting physicians, Dr. Tevlin, who assessed Ochs as 50% disabled due to spinal disease. We are satisfied the ALJ properly rejected Dr. Brazin's and Dr. Tevlin's records because the reports were furnished to a law firm for purposes of a worker's compensation claim; an opinion rendered in a worker's compensation context may be disregarded with respect to a claimant's claim for SSDI. See Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984).

Ochs also argues that the ALJ improperly assessed his complaints of pain and his credibility. The ALJ's finding that the medical evidence did not support the extent of pain that Ochs alleged was supported by substantial evidence. Because Ochs's complaints suggested greater restriction than the evidence showed, the ALJ was permitted to consider other evidence such as Ochs's daily activities, duration of the pain, medication and treatment. See 20 C.F.R. § 404.1529(c)(3)(2005).

Specifically, the ALJ noted that the only treating orthopedist that saw Ochs during the relevant period, Dr. Gallick, found that Ochs's back was "definitely better." Ochs's treating physician, Dr. Rowe, did not prescribe any pain medication and only gave Ochs Xanax for his anxiety. Further, the Commissioner's consultant, Dr. Ahamed, found no acute distress, normal range of motion and upper extremity resistance, normal strength and sensation in the cervical spine, no muscle spasm or tenderness, and no sensory loss. As substantial evidence supports the ALJ's pain assessment, we find no error.

Regarding Ochs's credibility, this Court generally defers to an ALJ's determination because the ALJ is present at the hearing and can assess a claimant's demeanor. See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003). Here, Ochs's own testimony and accounts through the medical records seriously diminish his credibility and reports of symptoms. See supra note 1. Accordingly, the ALJ's credibility determination was supported by substantial evidence. See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (credibility determination supported by substantial evidence where there were discrepancies between claimant's testimony and the medical evidence of record).

Finally, Ochs argues that the Commissioner did not meet her burden at step five of the sequential evaluation. Ochs claims that the ALJ's determination of a light RFC violated the Burnett requirement that the ALJ "give some indication for the evidence which he rejects and his reason(s) for discounting such evidence." 220 F.3d at 121. We disagree – the ALJ expressly justified his reasoning for the light RFC and explained why he rejected Ochs's medical evidence.

Ochs also argues that the ALJ's hypothetical questions to the vocational expert violated the rule that hypothetical questions "must reflect all of the claimant's impairments supported by the record." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Here, the ALJ asked the vocational expert several hypothetical questions, involving medium, light, and sedentary level RFCs. Because the vocational expert identified representative jobs at nearly all RFC levels, the medium level jobs posed by the vocational expert are

10

inconsequential. We agree with the District Court that "the ALJ simply covered all his bases in questioning the vocational expert," and that his questions "reflected all of the claimant's impairments supported by the record."

Ochs claims that the ALJ rejected the vocational expert's opinion and impermissibly relied solely on the grids in his step five determination. However, the ALJ clearly stated, "[t]he undersigned credits the Vocational Expert's testimony that the claimant is able to perform work which exists in significant numbers in the national economy." Accordingly, there is substantial evidence that the ALJ gave deference to the vocational expert's testimony in determining that Ochs was not disabled.

## IV.

We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary. For the foregoing reasons, we conclude that substantial evidence supports the ALJ's decision that Ochs was not disabled during the relevant period. Accordingly, we will affirm the order of the District Court.

11